UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HANNAH ENICH, | ) |
| | ) CASE NO. C13-0721-RSM-MAT |
| Plaintiff, | ) |
| | ) |
| v. | ) REPORT AND RECOMMENDATION |
| | ) RE: SOCIAL SECURITY |
| CAROLYN W. COLVIN, Acting | ) DISABILITY APPEAL |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

Plaintiff Hannah Enich proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be AFFIRMED.

//

//

REPORT AND RECOMMENDATION
PAGE -1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1974.[1]  She completed three years of college and has been certified as an emergency medical technician, and has previously worked as an anesthesia technician, cashier, dishwasher, ambulance driver, firefighter, custodian, lawnmower, caregiver, and hydroblaster. (AR 173, 177, 179.)

Plaintiff filed an SSI application on October 2, 2009, alleging disability beginning May 11, 2009. (AR 153-56.)  Plaintiff's application was denied at the initial level and on reconsideration. (AR 91-94, 97-99.)  Plaintiff timely requested a hearing. (AR 106-08.)

On August 30, 2011, ALJ Stephanie Martz held a hearing, taking testimony from Plaintiff and a vocational expert (VE). (AR 37-80.)  On September 20, 2011, the ALJ issued a decision finding Plaintiff not disabled. (AR 16-30.)

Plaintiff timely appealed.  The Appeals Council denied Plaintiff's request for review on March 27, 2013 (AR 1-7), making the ALJ's decision the final decision of the Commissioner.  Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 18.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found Plaintiff's lumbar spondylosis and degenerative disc disease with disc protrusions and bulges and annular tear, asthma, obesity, post-traumatic dress disorder (PTSD), depression with psychotic features, borderline personality disorder, and polysubstance abuse in remission severe. (AR 18-21.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 21-24.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff able to perform less than the full range of light work as defined in 20 C.F.R. § 404.967(b); able to lift and carry twenty pounds occasionally and ten pounds frequently; able to stand, walk, and sit for about six out of eight hours (assuming the opportunity to stand for approximately fifteen minutes after sitting for an hour); able to occasionally climb ladders, ropes or scaffolds, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to extreme cold, fumes, odors, gases, and poor ventilation. She can understand, remember, and carry out simple and some detailed instructions. She can have occasional contact with co-workers, supervisors, and the general public. (AR 24-29.)

With that assessment, the ALJ found Plaintiff unable to perform any past relevant

work. (AR 29.) If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Considering the Medical-Vocational Guidelines and the VE's testimony, the ALJ found Plaintiff capable of performing representative occupations including surveillance system monitor and specific security guard positions. (AR 29-30.) Accordingly, the ALJ found that Plaintiff was not disabled. (AR 30.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues that sleep apnea should have been considered a severe impairment at step two, in light of the record before the ALJ as well as the additional evidence submitted to the Appeals Council, and that the ALJ erred in evaluating the medical evidence, specifically the opinions of treating physician Deborah Oksenberg, M.D., and examining physicians Anselm Parlatore, M.D., and Mark Heilbrunn, M.D. The Commissioner contends that the ALJ's decision is supported by substantial evidence and free from legal error, and should be affirmed.

REPORT AND RECOMMENDATION
PAGE -4

Sleep Apnea

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe mental or physical impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques, and established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms. 20 C.F.R. §§ 404.1508, 416.908.

The ALJ found that Plaintiff's sleep apnea was not a medically determinable impairment for two reasons: (1) she only recently began complaining of sleep apnea-related symptoms, and she first reported on July 13, 2011, that she had no apneic episodes (AR 793), and reported on July 21, 2011, that her partner never witnessed any apneic episodes (AR 834), but then reported on August 10, 2011, that he did witness apneic episodes (AR 906-07); and (2) there is no objective testing confirming that Plaintiff has sleep apnea. (AR 20.)

Plaintiff argues that the ALJ erred in construing her description of symptoms as inconsistent, because she and her partner likely became more aware of her apneic symptoms as she further pursued treatment for sleep apnea. Dkt. 17 at 18-19. Furthermore, Plaintiff points to post-hearing evidence establishing a sleep apnea diagnosis. *See* Dkt. 17-1 at 4. Plaintiff contends that she submitted this evidence to the Appeals Council, but it was erroneously not mentioned in the Appeals Council's order denying review and was presumably rejected and returned. Dkt. 17 at 19-21. The Commissioner does not concede

that Plaintiff actually submitted the records to the Appeals Council (Dkt. 21 at 3), but argues that even if she did submit them and they were rejected and returned, this Court should consider whether the evidence justifies a "sentence six" remand under 42 U.S.C. § 405(g).

A sentence-six remand is appropriate to allow the Commissioner to assess "new" and "material" evidence is submitted to the court for the first time. 42 U.S.C. § 405(g). Here, the evidence attached to the Plaintiff's opening brief is not "material," because Plaintiff has not shown a reasonable possibility that it would change the outcome of the ALJ's determination. *See Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (holding that evidence considered under sentence six must be material to the matter in dispute and establish a "reasonable possibility" that the outcome of the administrative hearing would be different (quoting *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1983))). Plaintiff's sleep study results did not establish that she actually has sleep apnea; the specialist who reviewed her sleep study results concluded that she has sleep-disordered breathing, which might be obstructive sleep apnea or might be central apnea connected with her opiate medication regime. Dkt. 17-1 at 4. Her physician recommended a course of action that was expected to determine what type of sleep disorder Plaintiff was suffering from. *Id.* He also noted that by September 8, 2011, Plaintiff no longer experienced insomnia nor somnolence, but "still feels fatigued." Dkt. 17-1 at 3. Subsequent medical records[2] from just a couple of weeks later show that Plaintiff began using a CPAP machine and experienced "improved sleep and less daytime somnolence," and that she planned to follow up with her sleep specialist. (AR 928.)

---

[2] This record was submitted post-hearing, but was considered by the Appeals Council and incorporated into the administrative record. (AR 2, 5.)

Thus, even though Plaintiff was diagnosed with a sleep disorder a few weeks after the administrative hearing, the evidence before the Court indicates that her symptoms rapidly improved with treatment and that she no longer experienced insomnia and encountered less daytime somnolence. Dr. Parlatore's August 2011 interrogatories regarding the severe limitations caused by Plaintiff's sleep apnea symptoms do not account for her improvement with treatment a month later. (AR 894-97.) Because the totality of the record indicates that Plaintiff experienced improvement with sleep-apnea treatment, and that some of her sleep-related symptoms improved even before she started treatment, the new evidence would not support a step-two finding that sleep apnea severely limited Plaintiff's abilities to perform basic work activities. *See* Social Security Ruling 96-3p, 1996 WL 374181, at *1 (Jul. 2, 1996) (indicating that the step-two inquiry "requires an assessment of the functionally limiting effects of an impairment(s) on an individual's ability to do basic work activities"); *Allen v. Comm'r of Social Sec. Admin.*, 498 Fed. Appx. 696, 697 (9th Cir. 2012) (holding that an impairment that can be adequately controlled by medication is not severe). Accordingly, regardless of whether the ALJ erred in rejecting sleep apnea at step two due to credibility concerns regarding Plaintiff's purportedly inconsistent reports regarding apneic symptoms, the new evidence would not establish that the ALJ's step-two findings would have changed or were erroneous. No sentence-six remand is necessary in these circumstances.

## Medical Opinion Evidence

Plaintiff challenges the ALJ's discounting the opinions of Drs. Oksenberg, Parlatore, and Heilbrunn. An ALJ can reject contradicted physicians' opinions only upon providing specific and legitimate reasons to do so, and Plaintiff argues that the ALJ's reasons did not

meet that standard. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).

A.   <u>Dr. Oksenberg's Opinions</u>

Plaintiff assigns error to the ALJ's rejection of Dr. Oksenberg's opinions that Plaintiff's physical impairments meet a Listing or limit her to sedentary work (AR 292-97, 515, 886-87), and that her mental impairments meet a Listing (AR 885-92).[3] The ALJ rejected Dr. Oksenberg's Listing opinions because (1) the opinion regarding nerve root compression was contradicted by other medical evidence showing that Plaintiff did not actually have any nerve root compression (AR 21-22); (2) the opinion regarding asthma was not supported by any evidence in the record (AR 22); and (3) the opinion regarding affective disorders was unexplained and inconsistent with her treatment notes (that, from the ALJ's perspective, "do not reflect an individual who is operating at the marked or more level in every realm of functioning") (AR 23-24). The ALJ rejected Dr. Oksenberg's November 2009 and October 2010 opinions regarding Plaintiff's ability to perform sedentary work (AR 292-97, 515-17) as inconsistent with Plaintiff's "actual functioning" and inadequately explained. (AR 27.) The Court will address the disputed opinions in turn.

1.   Nerve Root Compression

The ALJ rejected Dr. Oksenberg's opinion that Plaintiff met Listing 1.04 due to nerve root compression (AR 886-87) on the grounds that "there is no evidence of nerve root

---

[3] Buried in her section regarding Dr. Oksenberg's opinions, Plaintiff also argues that the ALJ erred in failing to address how her bipolar diagnosis (assessed by Lori Sherman, M.D. (AR 839)) impacted her ability to maintain concentration, persistence, and pace. Dkt. 17 at 16. But Dr. Sherman never provided any opinion as to Plaintiff's abilities in those areas, and her diagnosis alone does not establish any particular functional limitations. Thus, Plaintiff has not established that the ALJ erred in failing to discuss the impact of Dr. Sherman's diagnosis. *See, e.g., Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ not required to provide clear and convincing reasons to reject physician's statement when statement did not assess any limitations).

compression in the record," and that orthopedist George Raj, M.D., "specifically reported there was no evidence of nerve root compression and instead thought the generation of [Plaintiff's] pain complaints was annular tears." (AR 22 (citing AR 337-52).) The Commissioner concedes that the ALJ mistakenly attributed the contradictory medical evidence to Dr. Raj, rather than Tbuy Trang Tran-Wong, ARNP, but emphasizes that the cited medical evidence supports the ALJ's overall conclusion that Dr. Oksenberg's opinion regarding nerve root compression is not supported by the record. Dkt. 21 at 8. The record shows that Plaintiff's November 2009 MRI did not reveal any "significant signs" of "nerve root impingement." (AR 343.) Whether or not "nerve root impingement" is equivalent to "nerve root compression" (as suggested by the ALJ's decision), however, the record nonetheless does not reference any evidence of "nerve root compression" and thus Dr. Oksenberg's opinion that Plaintiff had such compression is not supported by the record. (AR 886.) The ALJ did not err in rejecting this opinion as unsupported by the record.

  2. Asthma

Plaintiff does not challenge the ALJ's rejection of Dr. Oksenberg's opinion regarding asthma, and thus the Court need not address it here.

  3. Affective Disorders

Plaintiff argues that the ALJ erred in rejecting Dr. Oksenberg's opinion that her depression met the listing requirements for affective disorders, because even if the interrogatory answer itself was unexplained, her treatment notes support her opinion. Dkt. 17 at 11. Plaintiff also argues that the ALJ erred in interpreting Dr. Oksenberg's treatment notes as inconsistent with her opinions regarding "marked" limitations because an impairment is

"marked" if it "seriously" interferes with a particular area of functioning, and Dr. Oksenberg's treatment notes (and other treatment notes from other providers) document serious impairment (as documented by, *inter alia*, Global Assessment of Functioning scores of 45 and 48). Dkt. 17 at 10-17.

Plaintiff's argument is unpersuasive. Dr. Oksenberg's treatment notes document Plaintiff's depression diagnosis and treatment, but do not contain clinical notes regarding the effect of Plaintiff's depression on her functioning. (AR 381-26, 792-832, 927-50.) The ALJ reasonably construed Dr. Oksenberg's treatment notes as inconsistent with her opinions regarding Plaintiff's marked functional limitations, because her notes do not discuss functional limitations at all. Although Plaintiff directs the Court's attention to the treatment notes of other providers, as evidence that would support Dr. Oksenberg's opinions, Plaintiff has not cited any treatment notes explicitly addressing functional limitations caused by Plaintiff's depression. Thus, she has not established that the ALJ's reasons for rejecting Dr. Oksenberg's opinion regarding affective disorders are insufficient.

4.   Opinions Regarding Sedentary Work

The ALJ found that Dr. Oksenberg's opinions regarding Plaintiff's physical limitations were inconsistent with her activities — including painting (AR 194, 202, 823) gardening (AR 48-49, 299), helping her mother pave a patio and landscape her driveway (AR 338), and fly-fishing on a weeklong vacation for possibly a couple of hours at a time (AR 62-63) — and Plaintiff argues that this finding is in error because there is no evidence that Plaintiff performed those activities in a way that contradicts her testimony regarding her limitations. Dkt. 22 at 4. But the ALJ is permitted to draw reasonable inferences from the

record, and Plaintiff has not shown that the ALJ's unreasonably inferred that Plaintiff's self-reported activities were inconsistent with her testimony that she cannot stand for more than a few minutes at a time, has difficulties going down stairs and crouching, and often has trouble walking more than 10-20 minutes at a time. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The Court will uphold the ALJ's findings will be upheld 'if supported by inferences reasonably drawn from the record.…'" (quoting *Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)). Although Plaintiff posits that her activities could have been performed in a way that would still be consistent with her testimony *(e.g.*, Dkt. 22 at 7), she does not establish that the ALJ's interpretation is unreasonable. Accordingly, the ALJ's inferences regarding Plaintiff's activities should be upheld.

B.  Dr. Parlatore's Opinions

Dr. Parlatore provided numerous psychiatric opinions between November 2009 and August 2011, and the ALJ gave little weight to them because (1) Dr. Parlatore failed to explain why he believed Plaintiff's condition had deteriorated over time, (2) Dr. Parlatore did not "explain the bases for any of his opinions or assessments," and (3) Dr. Parlatore's opinions were inconsistent with Plaintiff's daily activities. (AR 28.) Plaintiff argues that Dr. Parlatore actually did explain his opinions (when all of the evaluations of record are considered), and that the ALJ erred in failing to identify specific inconsistent daily activities.

The ALJ also gave no weight to Dr. Parlatore's July 2011 and August 2011 interrogatories, which indicate that Plaintiff meets the criteria of several listed impairments, including PTSD, affective disorders, personality disorders, and organic mental disorder (due to sleep apnea). (AR 23 (citing AR 724-30, 894-98).) The ALJ relied on two of the same

reasons listed above to reject Dr. Parlatore's interrogatories — lack of explanation, and inconsistency with Plaintiff's daily activities — and further noted that Dr. Parlatore's opinion about the limitations caused by Plaintiff's sleep apnea "are based solely on the report of symptoms and limitations provided by the claimant," which is not credible due to the inconsistencies in her description of apneic symptoms. (AR 23.) Plaintiff specifically challenges[4] the ALJ's rejection of Dr. Parlatore's interrogatory evidence, and the Court will address in turn each of the reasons the ALJ provided for rejecting that evidence.

1.   Lack of explanation

Dr. Parlatore's interrogatory opinions that Plaintiff met various listing requirements were expressed in checkbox form. (AR 724-30, 894-902.) The ALJ asserted that Dr. Parlatore did not explain "the basis for his findings of limitations in this form letter, or in the few evaluations [AR 286-91, 353-57, 531-36] he performed of the claimant in order for her to continue to receive State assistance benefits." (AR 23.) Plaintiff contends that this finding is inaccurate, because when the interrogatory opinions are read in conjunction with the form evaluations, Dr. Parlatore's "observations, findings, and clinical basis for his diagnoses and opinions" can be ascertained. Dkt. 23 at 17.

Plaintiff's point is not well-taken, because Dr. Parlatore did not support his opinions with observations even in the DSHS form evaluations. *See, e.g.*, AR 289, 534, 901. Although

---

[4] Plaintiff also disputes (Dkt. 17 at 23-24) the validity of one of the reasons the ALJ provided for discounting Dr. Parlatore's August 2011 form evaluation: the lack of explanation as to why "he felt [Plaintiff's] limitations had worsened." (AR 28.) As noted by the ALJ, Dr. Parlatore indicated in August 2011 that Plaintiff had numerous cognitive limitations not noted on previous evaluations. (AR 901.) Plaintiff argues that this change can be attributed to a new sleep apnea diagnosis, but Dr. Parlatore did not so indicate on the evaluation and instead stated that Plaintiff "had no clinically relevant cognitive deficits." (AR 902.) Thus, the ALJ's reasoning regarding the August 2011 form evaluation is legitimate.

he indicated in his August 2011 interrogatories that his opinion regarding the effects of Plaintiff's sleep apnea was based on his clinical interview of Plaintiff and her significant other, wherein they described Plaintiff's apneic symptoms, Dr. Parlatore nonetheless did not explain how that interview or those symptoms support his opinions regarding the existence of an organic mental disorder. (AR 896.) For example, although Dr. Parlatore indicated that Plaintiff experiences repeated episodes of deterioration or decompensation, each of extended duration, there is no evidence of such episodes in the record and Dr. Parlatore does not mention any in his brief summary of his clinical interview regarding sleep apnea. (AR 23, 895.) Thus, Plaintiff has not shown that the ALJ erred in finding that Dr. Parlatore's interrogatory opinions were unexplained, and this is a legitimate reason to discount a medical opinion. *See*, *e.g.*, *Batson*, 359 F.3d at 1195 (holding that an ALJ may discount a medical opinion when it is "in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of [the claimant's condition], and was based on [the claimant's] subjective descriptions of pain[,]" as well as when that opinion is "conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings").

2.      Daily Activities

The ALJ indicated that Dr. Parlatore's opinions regarding Plaintiff's listing-level impairments were inconsistent with her level of activities, specifically her ability to participate in hobbies, attend AA meetings regularly, and take improvisational comedy classes. (AR 23.) Plaintiff argues that these activities are not actually inconsistent with Dr. Parlatore's opinions, but the Court disagrees. Dr. Parlatore indicated that Plaintiff had a

"marked" restriction in activities of daily living (AR 724-25, 895, 897), and the ALJ reasonably found this opinion to be inconsistent with Plaintiff's self-reported activities (summarized at AR 22-23 (the ALJ's finding that Plaintiff's activities of daily living were only mildly restricted)). Thus, the ALJ sufficiently explained why she found Plaintiff's activities to be less restricted than Dr. Parlatore believed, and Plaintiff has not shown that this finding is unreasonable.

3. Credibility Concerns

The ALJ noted that Dr. Parlatore's opinion regarding the effects of sleep apnea was based on Plaintiff's self-reported apneic symptoms, which the ALJ found not credible due to inconsistencies in reporting over time. As discussed previously, Plaintiff posits that the differences in her self-reported symptoms should be attributed to increasing awareness of sleep apnea over time, rather than construed against her credibility. Dkt. 17 at 22. Plaintiff's explanation may be reasonable, but she has not established that the ALJ's interpretation was unreasonable. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Moreover, even if the ALJ erred in construing Plaintiff's description of apneic symptoms against her credibility, the ALJ provided additional legitimate reasons to discount Dr. Parlatore's opinions regarding the effect of sleep apnea, and thus any error is harmless.

C.  Dr. Heilbrunn's Opinions

Dr. Heilbrunn performed a consultative evaluation of Plaintiff in January 2010 and opined that Plaintiff could stand and/or walk up to five hours (15 minutes at one time) out of

an eight-hour workday, and sit up to 4-5 hours (20-30 minutes at one time) out of an eight-hour workday, and lift ten pounds on the left and 5-10 pounds on the right. (AR 330-36.) The ALJ gave only partial weight to this opinion because Dr. Heilbrunn did not review any additional medical records before rendering his opinion, and because "his limitations regarding [Plaintiff's] ability to sit and stand are inconsistent with his own objective findings as well as with [Plaintiff's] reported activities of daily living throughout the record." (AR 27.)

Plaintiff argues that the ALJ's reasoning is not sufficiently specific, because she did not indicate which of "his own objective findings" and her daily activities were inconsistent with Dr. Heilbrunn's conclusions. Dkt. 17 at 24. The Commissioner notes that the ALJ correctly indicated that Dr. Heilbrunn did not review Plaintiff's longitudinal record (AR 330), but only reviewed one Administration form containing her self-reported symptoms (AR 171-78). This is a specific and legitimate reason to discount Dr. Heilbrunn's opinion, because an ALJ properly considers the extent of a provider's familiarity with a claimant's record when assessing the provider's opinion. *See* 20 C.F.R. § 416.927(c)(6).

The ALJ's decision in its entirety also identifies daily activities that are inconsistent with Dr. Heilbrunn's opinion regarding Plaintiff's restricted ability to sit and stand. (AR 25-26 (describing Plaintiff's ability to pave/landscape, paint, sculpt, play the piano and guitar, garden, watch television, read, and fly-fish for a couple of hours per day).) Although the ALJ did not explicitly reiterate her recitation of these activities when she addressed Dr. Heilbrunn's opinion, the Court can infer that the ALJ referred to these activities previously described. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing

court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion."). Accordingly, because the ALJ identified specific and legitimate reasons[5] to discount Dr. Heilbrunn's opinion, Plaintiff has not shown that the ALJ erred in assessing his opinion.

## CONCLUSION

For the reasons set forth above, this matter should be AFFIRMED.

DATED this 20th day of December, 2013.

Mary Alice Theiler
Chief United States Magistrate Judge

---

[5] Plaintiff argues that the ALJ erred in crediting the State agency opinions "because the opinion of a non-examining doctor cannot alone constitute substantial evidence that warrants the rejection of the opinion of either an examining or treating physician" (Dkt. 17 at 24), but the ALJ did not cite the State agency opinions as grounds for discounting any medical opinion. (AR 26-29.) Thus, Plaintiff's argument regarding the State agency opinions, which is folded into her argument regarding Dr. Heilbrunn (Dkt. 17 at 1, 24), is misplaced.

REPORT AND RECOMMENDATION
PAGE -16